# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**FLOYD L. SEMONS,**

     Plaintiff,

    v.                       **Case No. 18-CV-1219**

**KRISTINA DEBLANC,**

     Defendant.

---

## ORDER

---

Plaintiff Floyd L. Semons, a Wisconsin state prisoner who is representing himself, filed this lawsuit under 42 U.S.C. § 1983 alleging that Psychological Associate Kristina DeBlanc retaliated against him and was deliberately indifferent to his risk of self-harm. Semons moves for judgment on the pleadings (ECF No. 61), for leave to file an amended complaint (ECF No. 63), and to strike the defendant's answer (ECF No. 64). Additionally, both parties move for summary judgment. (ECF Nos. 68 & 76.) For the reasons explained below, I will deny Semons's motions to amend his complaint, strike the defendant's answer, and for judgment on the pleadings. I will grant the defendant's motion for summary judgment and deny Semons's motion for summary judgment.

## 1. MOTION TO AMEND COMPLAINT

Semons requests leave to amend his complaint to include a new defendant, Dr. Jamie Engstrom.[1] He asserts that DeBlanc "shall have known" that Dr. Engstrom was a proper defendant instead of Nurse Block. (ECF No. 63 at 1.) DeBlanc opposes Semons's motion because Semons delayed in requesting it and because allowing the amendment would unduly prejudice her. (ECF No. 65 at 1.)

Under Federal Rule of Civil Procedure 15(a)(1), a party may move to amend its pleading once as a matter of course within twenty-one days of serving it or after service of a responsive pleading. Semons's motion comes under Rule 15(a)(2), which allows later amendment "only with the opposing party's written consent or the court's leave." This Rule instructs courts to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Nonetheless, a district court may deny leave to amend for several reasons, including undue delay, bad faith, dilatory motive, prejudice, or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Semons argues that DeBlanc should have known he meant to sue Dr. Engstrom instead of Nurse Block. He asserts that he asked DeBlanc during discovery to consent to adding Dr. Engstrom as a defendant. (ECF No. 63 at 1.) It is the responsibility of the plaintiff, not the defendant, to name the appropriate parties the plaintiff seeks to sue. Semons also knew Dr. Engstrom was the proper defendant sometime during discovery, yet he waited until the discovery deadline to move to add

---

[1] Semons lists this defendant as "J. Engstrom," but documents throughout the record provide her full name.

her. Semons provides no reason for his delay. Moreover, the documents Semons submitted in support of his motion show Dr. Engstrom treated Semons during the same time period as DeBlanc. (*E.g.*, ECF No. 63-1 at 5–6.) Given he was well aware of Dr. Engstrom and her involvement in his treatment in June 2017, Semons has no excuse for not including her as a defendant in his August 2018 complaint. Not only is his delay inexcusable, it suggests his motion is brought in bad faith.

Semons also does not comply with this court's local rules for amended pleadings. Under Civil Local Rule 15, a party seeking to amend a pleading "must reproduce the entire pleading as amended" and attach the amended pleading as an attachment to the motion to amend. Semons has not done either of these things. His failure to follow this court's local rules is reason alone to deny his motion to amend. *See Hinterberger v. City of Indianapolis*, 966 F.3d 523, 525 (7th Cir. 2020) ("Courts expect parties to know and follow local rules of practice."). For these reasons, I will deny Semons's motion to amend his complaint and to include Dr. Engstrom as a defendant.

## 2. MOTION TO STRIKE ANSWER

Semons asserts that DeBlanc's answer improperly denies all his allegations and raises an affirmative defense that Semons failed to exhaust his administrative remedies. (ECF No. 64.) He contends that because he has exhausted his administrative remedies, DeBlanc's affirmative defense is a false statement. (*Id.*)

Semons's motion is frivolous. Semons twice previously moved to order the defendant to submit a new answer because of her general denial. I concluded that

3

DeBlanc's general denial was not improper. (ECF No. 54 at 2; ECF No. 60.) The passage of time and discovery has not changed my conclusion. Nor was it improper for DeBlanc to raise exhaustion as an affirmative defense. A party must raise in an answer any affirmative defenses on which it may rely. *See* Fed. R. Civ. P. 12(b). That evidence later showed Semons exhausted his administrative remedies does not make DeBlanc's raising his failure to exhaust as a possible defense a false statement to the court. I will deny Semons's motion to strike the defendant's answer.

### 3. MOTION FOR JUDGMENT ON THE PLEADINGS

A motion under Federal Rule of Civil Procedure 12(c) is evaluated under the same standards that govern a Rule 12(b)(6) motion to dismiss. *See Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014). The court may not look beyond the pleadings in ruling on a motion under Rule 12(c), accepts as true all facts alleged in the complaint, and construes all reasonable inferences in favor of the non-moving party. *See Lodholtz v. York Risk Servs. Grp.*, 778 F.3d 635, 639 (7th Cir. 2015) (citations omitted); *United States v. Wood*, 925 F.2d 1580, 1581 (7th Cir. 1991). To prevail, the moving party must demonstrate "that there are no material issues of fact to be resolved." *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007).

Semons asserts that documents he has collected during discovery, and which he included with his motion, show that he is entitled to relief. But the "pleadings" on which judgment may be granted are limited to the complaint and the defendant's answer. *See N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). Semons improperly seeks to rely on documents outside of the

4

pleadings. (ECF No. 62.) Although I could consider these external documents and convert the motion into one for summary judgment, *see id.* at 453 n.5, neither party has requested that conversion. Moreover, both parties separately moved for summary judgment a month after Semons moved for judgment on the pleadings. It would therefore be inappropriate to convert this motion into one for summary judgment. I will exclude these extraneous documents from consideration of this motion. *Id.*

Considering only the pleadings and construing all reasonable inferences in DeBlanc's favor (as the non-moving party), Semons does not prove that he is entitled to judgment. Semons alleges that DeBlanc retaliated against him and failed to prevent him from cutting himself. But as Judge Jones noted in screening Semons's complaint, Semons's allegations are not at all clear. For example, Judge Jones "assume[d]" that Semons had stated a claim of retaliation. An assumption may be sufficient to get a claim past screening, but it is not enough to warrant a ruling in Semons's favor. Moreover, DeBlanc denies Semons's allegations. Because the allegations in the complaint do not show Semons is entitled to relief, judgment on the pleadings is not proper. I will deny Semons's motion for judgment on the pleadings.

### 4. MOTIONS FOR SUMMARY JUDGMENT

*4.1 Factual background*

The facts are taken from the defendant's proposed findings of fact, the defendant's declaration in support, and the transcript of Semons's deposition. (ECF Nos. 70–73.) Semons responded to the defendant's facts (ECF No. 80) and to DeBlanc's declaration (ECF No. 77) but did not submit his own findings of fact. Nor does Semons cite

5

evidence in the record in support of most of his purported factual disputes. I will consider each party's proposed facts and factual disputes only to the extent they are supported by evidence in the record and will deem admitted any facts that a party has not properly contested. See Fed. R. Civ. P. 56(c)(1); Civil L. R. 56(b)(1)(C)(i), (b)(2)(B)(i)–(ii), and (b)(4); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission."). I will consider arguments in the supporting memoranda only to the extent they properly refer to each party's statement of facts. See Civil L. R. 56(b)(6).

Semons is an inmate housed at Waupun Correctional Institution ("Waupun"). (ECF No. 70, ¶ 1.) DeBlanc has been a Psychological Associate at Waupun since September 19, 2016. (*Id.*, ¶ 2.) DeBlanc provides mental health services to inmates at Waupun including crisis work, clinical monitoring, individual therapy, on-call services, and psychological assessment. (*Id.*, ¶ 4.) DeBlanc has access to Corrections Psychological Services files, Social Services files, and Health Services files in accordance with HIPAA. (*Id.*, ¶ 5.)

Judge Jones allowed Semons to proceed on a First Amendment claim that DeBlanc retaliated against him for filing inmate complaints about DeBlanc. (ECF No. 27 at 5–6.) Judge Jones also allowed Semons to proceed on an Eighth Amendment claim that DeBlanc failed to protect Semons from harming himself with a razor. (*Id.* at 6–7.)

*Initial Treatment and Testing*

DeBlanc began working with Semons in December 2016 and saw him for biweekly appointments. (ECF No. 70, ¶ 6.) Semons initially asked DeBlanc for a referral to the Wisconsin Resource Center ("WRC") or the Behavior Health Unit at Waupun but otherwise did not show interest in DeBlanc's treatment services. (*Id.*, ¶ 7.) DeBlanc continued to schedule Semons for biweekly appointments through May 2017 and encouraged him to participate in treatment. (*Id.*, ¶ 8.) Semons continued to request psychological services but appeared disinterested in treatment materials. (*Id.*, ¶ 9.) He instead would request transfer or referral to the Resource Center, but he also reported experiencing hallucinations. (*Id.*; ECF No. 71-1 at 5–7.) Because of Semons's conflicting presentations, DeBlanc found it difficult to discern what treatment was appropriate. (ECF No. 70, ¶ 10.) She believed psychological testing could help her determine an appropriate treatment and referred Semons to Dr. Engstrom for the testing. (*Id.*; ECF No. 71-1 at 2.) Dr. Engstrom is a licensed psychologist who was employed by Waupun from June 2016 through June 2019. (ECF No. 70, ¶ 11.)

On June 19, 2017, Dr. Engstrom administered psychological testing to Semons to determine his intellectual functioning. (ECF No. 70, ¶ 13; ECF No. 72-1 at 2.) The test revealed Semons was in the "Extremely Low range of functioning," lower than 99.9% of tested individuals his age. (ECF No. 70, ¶ 13; ECF No. 72-1 at 2.) Dr. Engstrom noted that individuals testing in this range tend to have difficulty living independently or caring for themselves without assistance. (ECF No. 70, ¶ 13;

7

ECF No. 72-1 at 2.) Because Semons was able to manage himself appropriately, Dr. Engstrom posited that Semons may have sabotaged the test and determined that further testing was needed to assess whether he was feigning a severe intellectual impairment. (ECF No. 70, ¶ 14; ECF No. 72-1 at 2.)

On July 31, 2017, Dr. Engstrom administered additional tests to Semons, which tests showed a high probability that Semons "did not exert effort in completing the test" and suggested that he was feigning or exaggerating his mental disorder. (ECF No. 70, ¶¶ 15–17; ECF No. 72-1 at 2.) Dr. Engstrom described Semons's results as representing "an unsophisticated attempt to seem mentally ill." (ECF No. 72, ¶ 10.) Based on these results, and Semons's stated desire to be transferred to the WRC, Dr. Engstrom determined that further diagnosis was not possible and recommended that Semons be monitored for evidence of malingering or true psychological dysfunction. (ECF No. 70, ¶¶ 18–19; ECF No. 72-1 at 2.) She also concluded that Semons met the criteria for Antisocial Personality Disorder evidenced by his criminal history, lying and manipulative behavior, and lack of remorse. (ECF No. 72, ¶ 14.) Because Semons was placed in restricted housing, and several times was placed in observation status, no further testing was possible at the time. (ECF No. 70, ¶ 19; ECF No. 72-1 at 2.) Dr. Engstrom finalized her report on August 22, 2017. (ECF No. 70, ¶ 20; ECF No. 72-1 at 3.)

*August 2017 Incidents*

On August 1, 2017, Semons was placed on observation status after security staff informed the on-call clinician that he had cut his left shoulder. (ECF No. 70,

8

¶ 21; ECF No. 74-1 at 69.) Dr. Engstrom evaluated him at his cell front, where she noticed small amounts of blood smeared on his cell window. (ECF No. 74-1 at 72.) Semons stated that he was doing "bad" and had cut himself with a razor when he woke up at 4:30am. (*Id.*) He showed Dr. Engstrom several scratches on his left shoulder but stated he did not have lingering thoughts of harming himself. (*Id.*) But he also told security staff that he had a razor, plastic wrap, and a flashlight and stated, "If I can't go to sleep I'll start cutting." (*Id.*) Dr. Engstrom concluded that Semons should remain in observation "to ensure his safety." (*Id.*) The next day he told a different member of the psychological staff that he had cut himself because "he was upset and frustrated because nobody could find his medication." (*Id.* at 74.) Staff eventually found his medication, and Semons stated that he felt better after eating something and taking his medication. (*Id.*) On August 3, 2017, Semons told another psychologist that he was "not good" and swallowed shampoo he had inappropriately obtained through his cell's trap door. (*Id.* at 75.) The psychologist notified the Health Services Unit and concluded that Semons should remain in observation. (*Id.*)

Semons was removed from observation status on August 8, 2017, and met with DeBlanc at his cell on August 15, 2017, to complete a seven-day follow-up. (ECF No. 70, ¶ 21; ECF No. 71-1 at 10, 22.) Semons said he was "okay" and asked DeBlanc if she had received his requests for treatment, stating "I really need to see you." (ECF No. 70, ¶ 22; ECF No. 71-1 at 10.) He denied any intention to harm himself but told

9

DeBlanc he had cut himself the day before.[2] (ECF No. 70, ¶ 23; ECF No. 71-1 at 10.) When she asked him to show her the wound, Semons showed her an old, nearly healed wound on his forearm that he referred to as a "scratch." (ECF No. 70, ¶ 23; ECF No. 71-1 at 10.) DeBlanc scheduled him for a session, though she did not see any wounds evidencing that he had cut himself, and he continued to deny having suicidal ideation or plans to engage in self-harm. (ECF No. 70, ¶ 24; ECF No. 71-1 at 10.) Semons did not inform DeBlanc that he had a razor or show her that he had one. (ECF No. 70, ¶ 25; ECF No. 71, ¶ 16.)

Semons submitted an affidavit from inmate William F. Counts, who states he overheard DeBlanc and Semons's August 15, 2017 interaction. (ECF No. 58.) Counts states that Semons accused DeBlanc of being angry at him "for rap lyric's [sic] and security," to which DeBlanc called Semons a "snitch." (*Id.*) Counts began laughing and did not hear the rest of the conversation. (*Id.*) Semons testified that Counts could not see into Semons's cell and could not have seen any razor that Semons may have possessed at the time. (ECF No. 70, ¶ 56; ECF No. 73 at 86:13–19.)

Later in the day on August 15, 2017, Semons submitted a request for psychological services in which he again requests a transfer to the WRC followed by long-term one-on-one treatment. (ECF No. 70, ¶ 26; ECF No. 71-1 at 23.) The request also states in darker ink, "Help me Dr. Deblanc this treatment where [sic] isn't working I don[']t want to kill myself I want treatment I'm trying very hard to work

---

[2] Semons alleged that he submitted a request for psychological services on August 14, 2017, in which he stated that he had cut himself with a razor. (ECF No. 1 at 3.) There is no record of a request from Semons submitted that day. (ECF No. 70, ¶ 34.)

with you what you think." (ECF No. 70, ¶ 26; ECF No. 71-1 at 23.) According to DeBlanc the second statement in darker ink did not appear in the original request when she received it, and she believes it was written at a different time than the first statement. (ECF No. 70, ¶ 28; ECF No. 71, ¶ 19.) DeBlanc responded only that Semons was "not a candidate for WRC referral at this time." (ECF No. 70, ¶¶ 27–28; ECF No. 71-1 at 23.)

Semons submitted a second request on August 15, 2017, in which he asks DeBlanc to go over the reports of the tests Dr. Engstrom had conducted. (ECF No. 70, ¶ 29; ECF No. 71-1 at 24.) Semons also wrote, "I still cuting [sic] with razor since 8-14-17. Please inform me below." (ECF No. 71-1 at 24.) DeBlanc states that the second phrase about Semons cutting himself "appears to be written in a slightly darker ink" and was out of place in relation to the rest of the request, which led DeBlanc to believe this statement was written at a different time than Semons's request to go over the test results. (ECF No. 71, ¶ 22.) DeBlanc responded only to the first statement and informed Semons that she would schedule a time to go over the reports once Dr. Engstrom had completed her report. (ECF No. 70, ¶ 30; ECF No. 71-1 at 24.) Semons acknowledged during his deposition that he did not write the phrase "I still cuting with razor since 8-14-17," but he did not say who he believed altered the request. (ECF No. 70, ¶ 32 (citing ECF No. 73 at 30).) If Semons had included in his request a suggestion that his safety were at issue, numerous safety precautions would have been triggered, Semons would have been seen by a crisis clinician, and DeBlanc would not have received his request until those precautions

11

had been taken. (*Id.*, ¶ 33; ECF No. 71, ¶ 23.) There is no record in Semons's psychological record that any of these actions occurred. (ECF No. 70, ¶ 33.)

Two days later, on August 17, 2017, Semons submitted a request for health services stating that he had been cutting himself with a razor from 1:30pm to 4:00pm and was concerned about having Hepatitis C. (ECF No. 70, ¶ 35; ECF No. 71-1 at 21.) The request was received the next day, at which time a nurse and Dr. Engstrom (the crisis clinician) saw Semons. (ECF No. 70, ¶ 35; ECF No. 71-1 at 21.) Semons told Dr. Engstrom that he had cut his shoulder the prior day and showed her several superficial scratches. (ECF No. 70, ¶ 36; ECF No. 71-1 at 9.) He said he sent the razor to his social worker after cutting himself. (ECF No. 70, ¶ 36; ECF No. 71-1 at 9.) At his deposition, however, Semons testified that he lied about sending the razor to his social worker and "still had half of it, which I was still cutting myself with it that day and the next day." (ECF No. 70, ¶ 37; ECF No. 73 at 62:8–11.) Semons told Dr. Engstrom that he had no current urges to harm himself but needed therapy and was frustrated he had not recently had a session. (ECF No. 70, ¶ 38; ECF No. 71-1 at 9.) Based on Semons's statements, Dr. Engstrom decided not to place Semons on observation status. (ECF No. 70, ¶ 39; ECF No. 71-1 at 9.)

*Breakdown of Treatment and New Psychologist*

Soon after Semons's August 2017 observation placement, he began sending DeBlanc increasingly hostile submissions for psychological services that did not contain requests for treatment. (ECF No. 70, ¶ 41.) On September 1, 2017, he submitted a request in which he disagreed with his diagnosis and accused DeBlanc

12

of violating his right "to be 'free' from mental and physical abuse." (*Id.*, ECF No. 71-1 at 20.) DeBlanc responded by noting his concern and suggesting he bring up his questions about his diagnosis during their next session. (ECF No. 70, ¶ 41; ECF No. 71-1 at 20.)

On September 3, 2017, Semons submitted a request for psychological services in which he complained about DeBlanc's ability to treat him and again suggested he should be transferred to the WRC. (ECF No. 70, ¶ 42; ECF No. 71-1 at 19.) DeBlanc responded by telling Semons he had not put forth adequate effort into his treatment, which appeared to confirm Dr. Engstrom's June 2017 test results. (ECF No. 70, ¶ 42; ECF No. 71-1 at 19.) Semons states, without citing any evidence, that the tests were tampered with. (ECF No. 80, ¶ 42.)

On September 5, 2017, Semons submitted two requests for psychological services and an Information Request in which he complained about his treatment, insisted that DeBlanc was refusing to work with him, and accused DeBlanc of being "nothing bout [sic] a big deliberate indiffer[e]nce psychologist" and "a bachelorette not a psychologist." (ECF No. 70, ¶ 43; ECF No. 71-1 at 16–18.) To each of these requests DeBlanc responded, "Noted." (ECF No. 70, ¶ 43; ECF No. 71-1 at 16–18.)

On September 7, 2017, DeBlanc met with Semons on the visitor room of the Restricted Housing Unit to discuss his testing feedback, but Semons stated he was not interested in learning the results of his tests because they did not represent his circumstances or need for treatment. (ECF No. 70, ¶ 44.) He stated that he had Attention Deficit Hyperactivity Disorder and Post-Traumatic Stress Disorder and

13

had been focused on his treatment previously as an inmate at WRC. (*Id.*) DeBlanc suggested that Semons's behavior towards treatment had simply changed, to which Semons disagreed and stated that he "planned to take this matter 'to court.'" (*Id.*, ¶ 45; ECF No. 71-1 at 8.) Semons also told DeBlanc he had "information about [DeBlanc] and plans to get [her] fired." (ECF No. 70, ¶ 46; ECF No. 71-1 at 8.) DeBlanc terminated the session and determined afterwards that she would contact her supervisor in the Psychological Services department to determine the best course moving forward with Semons's treatment, given his apparent hostility towards working with her. (ECF No. 70, ¶¶ 46–47; ECF No. 71-1 at 8.) DeBlanc did not believe that Semons indicated any intention to harm himself during their encounter, and he did not tell her or show her that he had a razor. (ECF No 74-1 at 28, 32.) Later that afternoon, however, Semons was placed into clinical observation after making a superficial cut to his upper thigh. (*Id.*)

Shortly after consulting with her supervisor, Semons was removed from DeBlanc's caseload. (ECF No. 70, ¶ 48.) On September 12, 2017, Semons requested a new psychologist and the next day was reassigned to a new doctor. (*Id.*; ECF No. 71-1 at 11.)

*Semons's Claims of Retaliation*

On September 10, 2017, Semons submitted a request for psychological services in which he stated that he had been placed on a no-sharps restriction, and his toothbrush, pen, and spoon were taken away. (ECF No. 70, ¶ 49; ECF No. 71-1 at 15.) Despite the restriction, Semons was given a pen to write the request, in which he

14

accused DeBlanc of imposing the restriction as punishment because he had written an inmate complaint against her. (ECF No. 70, ¶ 49; ECF No. 71-1 at 15.) DeBlanc responded by noting that Semons had been placed on observation status on September 11, 2017. (ECF No. 70, ¶ 49; ECF No. 71-1 at 15.) The same day, Semons submitted a second request for psychological services claiming DeBlanc had provided him with gifts, including rap lyrics and shaving cream she purchased for him. (ECF No. 70, ¶ 50; ECF No. 71-1 at 13.) DeBlanc requested that security investigate Semons's allegations that she had provided him gifts. (ECF No. 70, ¶ 51; ECF No. 74-1 at 39.) The investigation concluded on October 19, 2017, and determined that DeBlanc had not engaged in misconduct and no disciplinary action was necessary. (ECF No. 70, ¶ 51; ECF No. 74-1 at 39.) DeBlanc states she was not aware of any complaints Semons made about her before his September 10, 2017 submissions. (ECF No. 70, ¶ 52; ECF No. 71, ¶¶ 32, 35.)

Also on September 10, 2017, Semons submitted two requests for psychological services to Dr. Schmidt (DeBlanc's supervisor), in which he asserted that DeBlanc had refused to work with him because he was faking his mental illness, provided him rap lyrics and hygiene products, printed his legal work, and revealed personal information to him. (ECF No. 70, ¶ 54; ECF No. 71-1 at 12.) Semons stated he was going to continue cutting himself with a new razor. (ECF No. 70, ¶ 54; ECF No. 71-1 at 12.) Semons separately requested placement in the Behavior Health Unit. (ECF No. 70, ¶ 53; ECF No. 71-1 at 14.) DeBlanc states she was not aware of these two

15

submissions at the time because they were not addressed to her, and she did not respond to them. (ECF No. 70, ¶¶ 53–54; ECF No. 71, ¶¶ 36–37.)

On September 11, 2017, a crisis clinician saw Semons and placed him in observation status because of his remark about cutting himself. (ECF No. 70, ¶ 54; ECF No. 71-1 at 12.) On October 13, 2017, Dr. Schmidt responded to Semons's requests and opined that DeBlanc had provided "an appropriate level of services." (ECF No. 70, ¶ 54; ECF No. 71-1 at 12.) Dr. Schmidt also told Semons that placement in the Behavior Health Unit was inappropriate. (ECF No. 70, ¶ 53; ECF No. 71-1 at 14.)

DeBlanc states in response to Semons's interrogatories that she did not provide him rap lyrics as a gift. (ECF No. 74-1 at 24.) She states that she learned during treatment that Semons used music as a coping mechanism and provided him "lyrics to a song with the intent that he could utilize [sic] as a form of distraction and to self-soothe." (*Id.* at 24, 34.) Her supervisors have since instructed her "that providing lyrics is not a group practice at this setting and, as such ha[s] not done it since." (*Id.* at 24.) DeBlanc reiterates that she initiated an investigation about Semons's claims that she had provided him gifts, and the investigation determined Semons's allegations were false. (*Id.* at 24–25.)

### 4.2 Summary Judgment Standard

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

16

"Material facts" are those that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

*4.3 Analysis*

*Deliberate Indifference*

I review Semons's claim against DeBlanc under the Eighth Amendment, which prohibits cruel and unusual punishments. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Semons must demonstrate both that he "suffered from an objectively serious medical condition" and that DeBlanc was "deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). An objectively serious medical condition is "one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). A prison official shows deliberate indifference when she "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015) (citing *Farmer*, 511 U.S. at 837). The risk of harm may come from an inmate's

17

act or threat of self-harm "up to and including suicide." *Miranda v. Cty. of Lake*, 900 F.3d 335, 349 (7th Cir. 2018). "[A]n official's failure to alleviate a significant risk that [s]he should have perceived but did not" does not amount to cruel and unusual punishment. *Farmer*, 511 U.S. at 838. In short, the evidence must evince DeBlanc's "actual, personal knowledge of a serious risk, coupled with the lack of any reasonable response to it." *Ayoubi v. Dart*, 724 F. App'x 470, 474 (7th Cir. 2018) (citing *Farmer*, 511 U.S. at 837, 844–45).

"Neither medical malpractice nor mere disagreement with a doctor's medical judgment is enough to prove deliberate indifference in violation of the Eighth Amendment." *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010) (citing *Estelle*, 429 U.S. at 106). Courts will not question a medical professional's course of treatment unless it is "so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising [her] professional judgment." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

Semons insists that DeBlanc should have ordered a search of his cell for a razor and was indifferent by declining to order one. (ECF No. 75 at 2.) But there is no evidence that Semons had a razor on August 15, 2017, when he told DeBlanc that he had cut himself a day earlier. Despite Semons's insistence to the contrary, DeBlanc's affidavit and August 15, 2017 report do not state that she saw a razor or that Semons showed her one. (ECF No. 74-1 at 68.) Nor does Semons swear that he had one. The affidavit from inmate Counts states that he overheard Semons and DeBlanc discuss a razor, which is consistent with DeBlanc's report. But Counts does not state that he

18

*saw* a razor. And Semons testified that Counts could not see into Semons's cell, so there is no way he would have known whether Semons possessed a razor.[3]

Semons also insists he never described the cut on his arm as a "scratch." (ECF No. 77, ¶ 14.) He attached a Health Services Unit request he sent on February 1, 2020, in which he asks whether a "Nurse Narrative Note" from two days earlier "verif[ies] there are cut(s) on my forearm [from] 8-15-2017." (ECF No. 81-2 at 12.) The nurse's response explains that the note "verifies that there are cuts and that you state they are from 8/15/17." (*Id.*; ECF No. 91-1.) It is not possible to determine whether the cuts he showed to staff in January 2020 are the same cuts he allegedly self-inflicted in August 2017. His insistence that the cuts are the same is insufficient to demonstrate that they are or that he inflicted them himself with a razor.

Even so, it is immaterial whether Semons's injury was a cut or scratch. The evidence shows that DeBlanc did not see a razor when she visited his cell on August 15, 2017. Semons did not show her a razor, the cut or scratch he showed DeBlanc was minor and nearly healed, and he insisted that he was not going to harm himself and only wanted a session with DeBlanc. There is no evidence that Semons's wound was bleeding or fresh or required treatment of any kind. The facts show that, rather than presenting a significant risk of serious harm to himself, Semons

---

[3] There is evidence that Semons had a razor he used to cut himself on August 19, 2017—four days after his encounter with DeBlanc. (ECF No. 63-1 at 3.) But there is no evidence DeBlanc was notified about the August 19, 2017 incident or that the razor he had then he also had four days earlier.

Semons submitted this exhibit as part of his motion to amend his complaint, which I am denying. Because he references the exhibit in his motion for summary judgment (ECF No. 76 at 2), and construing Semons's *pro se* motion liberally, I will consider it for purposes of this decision.

19

superficially cut himself in order to get DeBlanc's attention. Those actions do not constitute serious harm required to support an Eighth Amendment claim. *See Lord v. Beahm*, 952 F.3d 902, 904–05 (7th Cir. 2020) (holding that "an inmate's insincere suicide threat to get attention" and infliction of "minor scratches" do not support deliberate indifference claim against officers who did not respond to inmate's threats).

Nor has Semons shown evidence establishing that DeBlanc was indifferent to Semons's threats or actions. Semons was placed on observation status for a week after stating that he had cut his shoulder. DeBlanc spoke with Semons at his cell after he was released from observation, and he denied having suicidal ideations or plans to harm himself. DeBlanc concluded that Semons was not a risk to himself and scheduled him for sessions of treatment going forward, as Semons had requested. DeBlanc did not disregard Semons's actions or request for treatment and responded to him as she determined was appropriate. Two days later Semons submitted addition requests stating that he had cut himself again, but the evidence shows that Dr. Engstrom responded to these requests. Semons did not address his request to DeBlanc, and DeBlanc did not review or respond to the requests. That Semons cut himself (albeit superficially) after telling DeBlanc he would not does not mean DeBlanc was deliberately indifferent. DeBlanc may only be liable for not responding to a known risk of harm. *Farmer*, 511 U.S. at 838. It is undisputed that Semons insisted he would not harm himself during the August 15, 2017 interaction with DeBlanc. There was no reason for DeBlanc to believe that Semons would cut himself again two days later. Despite Semons's stated dissatisfaction with his treatment, the

20

evidence does not suggest DeBlanc's actions significantly departed from accepted professional norms for a psychologist in her position.

Semons insists DeBlanc is lying and disputes most of her statements in support of her motion for summary judgment. (ECF No. 77.) But he cites no evidence in support of most of his purported disputes. Semons's "argument alone is insufficient to avoid summary judgment." *Cooper v. Haw*, 803 F. App'x 942, 946 (7th Cir. 2020); *see also Hoeft v. Kasten*, 691 F. Supp. 2d 927, 931 (W.D. Wis.), *aff'd*, 393 F. App'x 394 (7th Cir. 2010) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) ("Although plaintiff provided sufficient *allegations* in his complaint to state an Eighth Amendment conditions of confinement claim, he has failed to produce sufficient *evidence* to defeat defendant's summary judgment motion on that claim."). Unless Semons cites to evidence disputing DeBlanc's statements, he cannot show a genuine issue of fact.

The undisputed evidence shows that DeBlanc was not aware of an objectively serious risk of significant harm that Semons posed to himself on August 15, 2017. Nor does the evidence show that DeBlanc subjectively disregarded any risk of serious harm Semons posed to himself. She conducted a post-observation interview, during which Semons reiterated that he had no intent to harm himself and only wanted a session with DeBlanc, which she scheduled. To the extent Semons asserts that DeBlanc failed to follow institution policy for psychological visits, DeBlanc may not be held constitutionally liable. *See Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001); *see also Estate of Simpson v. Gorbett*, 863 F.3d 740, 746 (7th Cir. 2017) (quoting

21

*Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003)) (explaining that § 1983 "protects against 'constitutional violations, not violations of . . . departmental regulation[s] and . . . practices'"). DeBlanc is entitled to judgment as a matter of law on this claim.

*Retaliation*

To proceed on his claim of retaliation, Semons must show that "he engaged in a protected activity, he suffered a deprivation likely to prevent future protected activities, and there was a causal connection between the two." *Felton v. Huibregtse*, 525 F. App'x 484, 486 (7th Cir. 2013) (citing *Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010), and *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)). The filing of an inmate complaint is protected activity. *See Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006). To prove the third element, Semons must show more than that DeBlanc's actions occurred after his protected activity. He must show that DeBlanc had actual knowledge of his protected conduct and acted because of it. *See Healy v. City of Chicago*, 450 F.3d 732, 740–41 (7th Cir. 2006). Suspicious timing between protected conduct and the retaliatory act may allow an inference of a retaliatory motive if the two events are "very close" in time. *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012) (quoting *Loudermilk v. Best Pallet Co.*, 636 F.3d 312, 315 (7th Cir. 2011). But speculation alone about a retaliatory motive "cannot create a genuine issue of material fact sufficient to survive a motion for summary judgment." *Parrilla v. Beahm*, No. 17-C-841, 2018 WL 3717026, at *6 (E.D. Wis. Aug. 3, 2018) (citing *Devbrow v. Gallegos*, 735 F.3d 584, 588 (7th Cir. 2013)).

22

There are two problems with Semons's retaliation claim. First, there is no evidence that DeBlanc is responsible for imposing the sharps restriction. The evidence shows only that the restriction was imposed on September 10, 2017, but it does not provide *who* imposed it on Semons. Second, even if Semons had shown DeBlanc were responsible for the restriction, there is no evidence that she did so in retaliation for Semons's complaint about DeBlanc giving him rap lyrics. DeBlanc last saw Semons for a treatment session on September 7, 2017. During that session Semons expressed his disinterest in the treatment DeBlanc offered, and DeBlanc terminated the session and requested that Semons be reassigned to a new psychologist. On September 10, 2017, Semons was placed on a no-sharps restriction. Later that day, he complained about the restriction and insisted that DeBlanc ordered it in retaliation for his complaints about her. He also stated that DeBlanc had gifted him rap lyrics and other items. But DeBlanc states she was not aware of any complaint Semons filed against her mentioning the lyrics and gifts until *after* the sharps restriction had been imposed.

This timeline shows that Semons ended treatment with DeBlanc, received a no-sharps restriction, and *then* sent complaints about the restriction and DeBlanc's treatment (including the lyrics and purported gifts). DeBlanc could not have been aware at the time of a complaint Semons did not file until *after* the no-sharps restriction was in place. The evidence shows it is not possible DeBlanc could have imposed the restriction in retaliation for Semons's complaint.

The only evidence suggesting DeBlanc had a reason to retaliate against Semons before the sharps restriction was in place is in Counts's affidavit. He states that during the August 15, 2017 encounter, DeBlanc called Semons a "snitch" for telling prison officials about her giving him the rap lyrics. But it was not until September 10, 2017, that the sharps restriction was imposed and Semons complained about DeBlanc giving him rap lyrics. The passage of nearly one month between the protected conduct and the adverse action is at best a weak suggestion of a retaliatory motive. *See Kidwell*, 679 F.3d at 966 ("For an inference of causation to be drawn solely on the basis of a suspicious-timing argument, we typically allow no more than a few days to elapse between the protected activity and the adverse action."). Even if DeBlanc was upset with Semons in August 2017, there is no evidence that she is responsible for placing the sharps restriction on Semons a month later. Semons merely insists that she is responsible. His speculation alone "cannot overcome the contrary evidence" that DeBlanc was uninvolved. *See Devbrow*, 735 F.3d at 588. A reasonable jury could not conclude that DeBlanc retaliated against Semons for filing his complaint against her.

Because the evidence shows that there are no genuine issues of material fact and DeBlanc is entitled to judgment as a matter of law, Semons's motion for summary judgment is denied.

*Qualified Immunity*

Semons's claim fails on the merits, so I need not address DeBlanc's argument for qualified immunity. *See Sierra-Lopez v. Cty.*, No. 17-CV-1222-PP, 2019 WL

24

3501540, at *10 (E.D. Wis. July 31, 2019) (citing *Viero v. Bufano*, 925 F. Supp. 1374, 1387 (N.D. Ill. 1996); and *Antepenko v. Domrois*, No. 17-CV-1211, 2018 WL 6065347, at *6 (E.D. Wis. Nov. 20, 2018)).

**THEREFORE, IT IS ORDERED** that Semons's motion for leave to file an amended complaint (ECF No. 63) is **DENIED**.

**IT IS FURTHER ORDERED** that Semons's motion to strike the defendant's answer (ECF No. 64) is **DENIED**.

**IT IS FURTHER ORDERED** that Semons's motion for judgment on the pleadings (ECF No. 61) is **DENIED**.

**IT IS FURTHER ORDERED** that the defendant's motion for summary judgment (ECF No. 68) is **GRANTED**.

**IT IS FURTHER ORDERED** that Semons's motion for summary judgment (ECF No. 76) is **DENIED**.

This case is **DISMISSED**. The clerk's office shall enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal my decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment

25

under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. I cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. I cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin, this 25th day of August 2020.

BY THE COURT:

NANCY JOSEPH
United States Magistrate Judge

26